IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRISTOL-MYERS SQUIBB CO.,<br><br>Plaintiff,<br><br>v.<br><br>SABA İLAÇ SANAYI VE TICARET A.Ş.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. _________________ |

## COMPLAINT

1. Plaintiff Bristol-Myers Squibb Company ("BMS") files this Complaint for patent infringement against Saba İlaç Sanayi ve Ticaret A.Ş. ("Saba"), and by its undersigned attorneys, hereby alleges as follows:

2. This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, and for declaratory judgment of patent infringement under 28 U.S.C. §§ 2201 and 2202 that arises out of the submission of an Abbreviated New Drug Application ("ANDA") by Saba to the United States Food and Drug Administration ("FDA") seeking approval to manufacture, use, offer for sale, sell, distribute, and/or import a generic version of Sotyktu® (deucravacitinib) tablets, 6 mg, prior to the expiration of United States Patent Nos. 10,000,480 (the "'480 Patent"); 11,021,475 (the "'475 Patent"); RE47929 (the "RE'929 Patent"); 12,521,390 (the "'390 Patent"); 12,734,169 (the "'169 Patent"); 12,751,948 (the "'948 Patent"); and 12,129,245 (the "'245 Patent") (collectively, "the Patents-in-Suit").

3. Saba notified BMS by a Notice Letter dated October 9, 2026, that it had submitted to the FDA ANDA No. 222064 ("Saba's ANDA"), seeking approval from the FDA to manufacture, use, offer for sale, sell, distribute, and/or import a generic version of Sotyktu® (deucravacitinib) tablets, 6 mg ("Saba's ANDA Product" or the "Saba ANDA Product").

## PARTIES

4. Plaintiff BMS is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at Route 206 and Province Line Road, Princeton, New Jersey 08543.

5. BMS holds New Drug Application ("NDA") No. 214958 for the marketing and sale of Sotyktu® (deucravacitinib) tablets, 6 mg, which has been approved by the FDA.

6. BMS is a global research and development-based biopharmaceutical company committed to discovering, developing, and delivering innovative medicines that help patients overcome serious diseases.

7. On information and belief, Defendant Saba is a corporation organized and existing under the laws of Turkey, having a principal place of business at Merkez Mah. Basin Ekspres Cad. No: 1, Kucukcekmece, Istanbul, Turkey, 34303.

8. On information and belief, Saba caused Saba's ANDA to be submitted to FDA and seeks FDA approval of Saba's ANDA.

9. On information and belief, Saba intends to commercially manufacture, market, offer for sale, and sell the Saba ANDA Product throughout the United States, including in the State of Delaware, in the event FDA approves Saba's ANDA.

## JURISDICTION AND VENUE

10. This is a civil action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 271 and 28 U.S.C. §§ 1338(a), 2201, and 2202.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

12. This Court has personal jurisdiction over Defendant Saba.

13. Saba is subject to personal jurisdiction in Delaware because, among other things, it

has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being hauled into court here. On information and belief, Saba manufactures, uses, offers to sell, sells, distributes, and/or imports generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware related to Plaintiff's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

14. On information and belief, Saba knows and intends that following any approval of Saba's ANDA, Saba will manufacture and import into the United States Saba's ANDA Product and directly or indirectly market, use, offer for sale, sell, and/or distribute Saba's ANDA Product throughout the United States, including in Delaware. On information and belief, following any FDA approval of ANDA No. 222064, Saba knows and intends that Saba's ANDA Product will be marketed, used, distributed, offered for sale, and sold in the United States and within Delaware.

15. Alternatively, this Court has personal jurisdiction over Saba because the requirements of Federal Rule of Civil Procedure 4(k)(2)(A) are met as (a) BMS's claims arise under federal law; (b) Saba is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) Saba has sufficient contacts in the United States as a whole, including, but not limited to, participating in the preparation and submission of Saba's ANDA and/or manufacturing and/or selling pharmaceutical products distributed throughout the United States including in this judicial district, such that this Court's exercise of jurisdiction over Saba satisfies due process.

16. Venue is proper in this district for Saba pursuant to 28 U.S.C. §1391 because, *inter alia*, Saba is a corporation organized and existing under the laws of Turkey and is subject to personal jurisdiction in this judicial district.

17. In addition, personal jurisdiction and venue are proper in this district as to Saba because Saba regularly engages in patent litigation concerning Saba's generic drug products in this judicial district, regularly invokes the jurisdiction of the courts of this judicial district by pleading counterclaims in patent infringement actions in this judicial district, and does not contest personal jurisdiction or venue in this judicial district. *See, e.g.*, *Bayer HealthCare Pharms. Inc., et al. v. SABA Ilac Sanayi ve Ticaret A.S.*, C.A. No. 1:26-cv-01073-JLH, D.I. 8 (D. Del. Sept. 16, 2026) (Saba pleading counterclaims, and not contesting personal jurisdiction or venue when answering complaint); *Azurity Pharms., Inc., et al. v. Saba Ilac Sanayi ve Ticaret A.S.*, C.A. No. 1:25-cv-00814-MN, D.I. 14 (D. Del. Oct. 7, 2025) (same); *Bayer HealthCare Pharms. Inc., et al. v. SABA Ilac Sanayi ve Ticaret A.S.*, C.A. No. 1:25-cv-01282-JLH, D.I. 11 (D. Del. Jan. 15, 2026) (same); *Arbor Pharms., LLC, et al. v. Saba Ilac Sanayi ve Ticaret A.S.*, C.A. No. 1:22-cv-00353-MN, D.I. 15 (D. Del. June 20, 2022) (same).

## **FACTUAL BACKGROUND**

18. BMS holds NDA No. 214958, which the FDA approved for the marketing and sale of 6 mg strength (deucravacitinib) tablets. BMS markets deucravacitinib tablets, 6 mg, under the trade name Sotyktu®. The FDA's publication of Approved Drug Products with Therapeutic Equivalence Evaluations (commonly known as the "Orange Book") includes Sotyktu® together with the '480, '475, RE'929, '390, '169, and '948 Patents.

19. Sotyktu® (deucravacitinib) is a ground-breaking, first-in-class, once-daily tyrosine kinase 2 ("TYK2") inhibitor approved to treat moderate-to-severe plaque psoriasis ("PsO") in adults who are candidates for systemic therapy or phototherapy and active psoriatic arthritis ("PsA") in adults.

20. Sotyktu®'s active ingredient, deucravacitinib, was developed to allosterically inhibit TYK2, thereby mediating the signaling of the key cytokines involved in the pathogenesis of immune-mediated diseases, such as PsO and PsA.

21. Sotyktu® is an important addition to the treatment landscape for patients with PsO and PsA. Indeed, Sotyktu® was the first TYK2 inhibitor to receive FDA approval for any immune-mediated disease. Sotyktu® also demonstrated superior efficacy compared to Otezla® (apremilast), and has become a welcomed first-line systemic treatment option for PsO patients. Sotyktu® has received new chemical entity exclusivity through September 9, 2027.

22. As a result of the inventive work of the BMS scientists responsible for its development, Sotyktu® is available in a 6 mg once-daily tablet.

## PATENTS-IN-SUIT

23. On June 19, 2018, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued the '480 Patent, entitled "Amide-Substituted Heterocyclic Compounds Useful as Modulators of IL-12, IL-23 and/or IFN Alpha Responses." A true and correct copy of the '480 Patent is attached hereto as Exhibit A. BMS is the assignee and owner of the '480 Patent. BMS owns all rights, title, and interest in and to the '480 Patent.

24. On June 1, 2021, the USPTO duly and lawfully issued the '475 Patent, entitled "Amide-Substituted Heterocyclic Compounds Useful as Modulators of IL-12, IL-23 and/or IFN Alpha Responses." A true and correct copy of the '475 Patent is attached hereto as Exhibit B. BMS is the assignee and owner of the '475 Patent. BMS owns all rights, title, and interest in and to the '475 Patent.

25. On April 7, 2020, the USPTO duly and lawfully issued the RE'929 Patent, entitled "Amide-Substituted Heterocyclic Compounds Useful as Modulators of IL-12, IL-23 and/or IFNα Responses." The RE'929 Patent is a reissue of U.S. Patent No. 9,505,748, which issued on

November 29, 2016. A true and correct copy of the RE'929 Patent is attached hereto as Exhibit C. BMS is the assignee and owner of the RE'929 Patent. BMS owns all rights, title, and interest in and to the RE'929 Patent.

26. On January 13, 2026, the USPTO duly and lawfully issued the '390 Patent, entitled "Dosage Forms for Tyk2 Inhibitors." A true and correct copy of the '390 Patent is attached hereto as Exhibit D. BMS is the assignee and owner of the '390 Patent. BMS owns all rights, title, and interest in and to the '390 Patent.

27. On September 15, 2026, the USPTO duly and lawfully issued the '169 Patent, entitled "Dosage Forms for Tyk2 Inhibitors." A true and correct copy of the '169 Patent is attached hereto as Exhibit E. BMS is the assignee and owner of the '169 Patent. BMS owns all rights, title, and interest in and to the '169 Patent.

28. On October 6, 2026, the USPTO duly and lawfully issued the '948 Patent, entitled "Dosage Forms for Tyk2 Inhibitors." A true and correct copy of the '948 Patent is attached hereto as Exhibit F. BMS is the assignee and owner of the '948 Patent. BMS owns all rights, title, and interest in and to the '948 Patent.

29. On October 29, 2024, the USPTO duly and lawfully issued the '245 Patent, entitled "Crystal Form of 6-(cyclopropanecarboxamido)-4-((2-methoxy-3-(1-methyl-1H-1,2,4-triazol-3-yl)phenyl)amino)-N-(methyl-$d_3$)pyridazine-3-carboxamide." A true and correct copy of the '245 Patent is attached hereto as Exhibit G. BMS is the assignee and owner of the '245 Patent. BMS owns all rights, title, and interest in and to the '245 Patent.

**SABA'S ANDA NO. 222064**

30. Saba's ANDA seeks approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation into the United States of a purported generic version of Sotyktu®

(deucravacitinib) tablets, 6 mg, prior to the expiration of the ’480, ’475, RE’929, ’390, ’169, ’948, and ’245 Patents.

31. Saba sent BMS a Notice Letter dated October 9, 2026. Saba’s Notice Letter notified BMS that Saba had submitted to FDA ANDA No. 222064 and purported Paragraph IV certifications with respect to the ’480, ’475, RE’929, and ’390 Patents, which are all listed in the Orange Book for Sotyktu®. Saba’s Notice Letter did not address the ’169 or ’948 Patents, both of which are listed in the Orange Book for Sotyktu®.

32. On information and belief, FDA has not approved Saba’s ANDA.

33. According to applicable regulations, Notice Letters such as Saba’s must contain a detailed statement of the factual and legal basis for the applicant’s opinion that the patent is invalid, unenforceable, or not infringed, which includes a claim-by-claim analysis, describing “for each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed” and “for each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation.” *See* 21 C.F.R. § 314.95(c)(7); *see also* 21 C.F.R. § 314.52.

34. In Saba’s Notice Letter, Saba purported to offer confidential access to portions of its ANDA No. 222064 on terms and conditions set forth in Saba’s Notice Letter (“the Saba Offer”). The Saba Offer contained restrictions regarding access to its ANDA that go well beyond those that would apply under a protective order. For example, the Saba Offer did not permit BMS’s in-house counsel or scientific experts to access ANDA No. 222064. Additionally, the Saba Offer contained provisions that unreasonably restricted the ability of outside counsel receiving access to ANDA No. 222064 to engage in any work before or involving FDA counseling, litigation, or other work before or involving the FDA. The restrictions the Saba Offer placed on access to ANDA No.

222064 contravene 21 U.S.C. § 355(j)(5)(C)(i)(III), which states that an offer of confidential access "shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, ***as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information.***" (emphasis added).

35. Outside counsel for BMS negotiated in good faith with counsel for Saba in an attempt to reach agreement on reasonable terms of confidential access to Saba's ANDA. In correspondence dated October 28, 2026, outside counsel for BMS proposed edits to the Saba Offer consistent with protective orders Saba has entered into in recent Hatch-Waxman litigation, and consistent with the purpose of 21 U.S.C. § 355(j)(5)(C)(i)(III). *See, e.g.*, *Arbor Pharms., LLC, et al. v. Saba Ilac Sanayi ve Ticaret A.S.*, C.A. No. 1:22-cv-00353-MN, D.I. 23 (D. Del. Sept. 6, 2022). There, Saba allowed expert and in-house counsel access to its ANDA and permitted outside counsel receiving access to engage in FDA-related work. *See id.*

36. On November 9, 2026, having received no response to BMS's proposed edits to the Saba offer, outside counsel for BMS asked Saba whether it had any counterproposals to BMS's proposed edits to the Saba Offer. Since then, outside counsel for BMS has not heard back from counsel for Saba regarding the conditions of access to Saba's ANDA. To date, BMS has not received access to Saba's ANDA.

37. On information and belief, if FDA approves Saba's ANDA, Saba will manufacture, offer for sale, or sell its ANDA Product, within the United States, including within the State of Delaware, or will import its ANDA Product into the United States, including the State of Delaware. On information and belief, the manufacture, use, offer for sale, sale, or importation of Saba's ANDA Product will directly infringe the '480, '475, RE'929, '390, '169, '948, and '245 Patents,

either literally or under the doctrine of equivalents, and Saba will actively induce and/or contribute to the infringement of the ’480, ’475, RE’929, ’390, ’169, ’948, and ’245 Patents, either literally or under the doctrine of equivalents.

38. This action is being brought within forty-five days of BMS’s receipt of Saba’s Notice Letter. Accordingly, BMS is entitled to a stay of FDA approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

**COUNT 1 — INFRINGEMENT OF THE ’480 PATENT BY SABA**

39. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

40. Saba has submitted or caused the submission of Saba’s ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product prior to the expiration of the ’480 Patent.

41. In Saba’s Notice Letter, Saba also notified BMS that, as part of its ANDA, Saba had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the ’480 Patent. Saba submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the ’480 Patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product. BMS is filing this Complaint within forty-five days of receipt of Saba’s Notice Letter.

42. Saba’s Notice Letter and accompanying statement lack any sufficient contention that the ’480 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the ’480 Patent renders this case “exceptional” as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys’ fees and such other relief as this Court deems proper.

43. In Saba's Notice Letter, Saba provided no noninfringement argument for at least claims 1–4, 6–10, and 12–14 of the '480 Patent separate and apart from any assertion of invalidity of those claims.

44. On information and belief, Saba's ANDA Product and/or the use thereof infringes one or more claims of the '480 Patent.

45. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product before the expiration of the '480 Patent was an act of infringement of one or more claims of the '480 Patent under 35 U.S.C. § 271(e)(2)(A).

46. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product immediately and imminently upon approval of its ANDA.

47. On information and belief, Saba plans and intends to, and will, actively induce infringement of the '480 Patent when Saba's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba's activities will be done with knowledge of the '480 Patent and specific intent to infringe that patent.

48. On information and belief, Saba's ANDA Product is not suitable for substantial non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the '480 Patent after approval of Saba's ANDA.

49. On information and belief, Saba has actual and constructive knowledge of the claims of the '480 Patent, and is aware that the submission of Saba's ANDA with the request for FDA approval prior to the expiration of the '480 Patent would constitute infringement of the '480 Patent.

50. The foregoing actions by Saba constitute and/or will constitute infringement of one or more claims of the ’480 Patent, active inducement of infringement of one or more claims of the ’480 Patent, and contributory infringement of one or more claims of the ’480 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

51. BMS will be substantially and irreparably damaged by infringement of the claims of the ’480 Patent.

52. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the ’480 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

## COUNT 2 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’480 PATENT BY SABA

53. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

54. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba’s infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the ’480 Patent.

55. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the ’480 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

## COUNT 3 — INFRINGEMENT OF THE ’475 PATENT BY SABA

56. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

57. Saba has submitted or caused the submission of Saba's ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product prior to the expiration of the '475 Patent.

58. In Saba's Notice Letter, Saba also notified BMS that, as part of its ANDA, Saba had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the '475 Patent. Saba submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the '475 Patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product. BMS is filing this Complaint within forty-five days of receipt of Saba's Notice Letter.

59. Saba's Notice Letter and accompanying statement lack any sufficient contention that the '475 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the '475 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys' fees and such other relief as this Court deems proper.

60. In Saba's Notice Letter, Saba provided no noninfringement argument for at least claims 1–3 and 9–12 of the '475 Patent separate and apart from any assertion of invalidity of those claims.

61. On information and belief, Saba's ANDA Product and/or the use thereof infringes one or more claims of the '475 Patent.

62. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's

ANDA Product before the expiration of the ’475 Patent was an act of infringement of one or more claims of the ’475 Patent under 35 U.S.C. § 271(e)(2)(A).

63. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product immediately and imminently upon approval of its ANDA.

64. On information and belief, Saba plans and intends to, and will, actively induce infringement of the ’475 Patent when Saba’s ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba’s activities will be done with knowledge of the ’475 Patent and specific intent to infringe that patent.

65. On information and belief, Saba’s ANDA Product is not suitable for substantial non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the ’475 Patent after approval of Saba’s ANDA.

66. On information and belief, Saba has actual and constructive knowledge of the claims of the ’475 Patent, and is aware that the submission of Saba’s ANDA with the request for FDA approval prior to the expiration of the ’475 Patent would constitute infringement of the ’475 Patent.

67. The foregoing actions by Saba constitute and/or will constitute infringement of one or more claims of the ’475 Patent, active inducement of infringement of one or more claims of the ’475 Patent, and contributory infringement of one or more claims of the ’475 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

68. BMS will be substantially and irreparably damaged by infringement of the claims of the ’475 Patent.

69. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the ’475 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

## COUNT 4 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’475 PATENT BY SABA

70. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

71. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba’s infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the ’475 Patent.

72. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the ’475 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

## COUNT 5 — INFRINGEMENT OF THE RE’929 PATENT BY SABA

73. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

74. Saba has submitted or caused the submission of Saba’s ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product prior to the expiration of the RE’929 Patent.

75. In Saba’s Notice Letter, Saba also notified BMS that, as part of its ANDA, Saba had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21

U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the RE'929 Patent. Saba submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the RE'929 Patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product. BMS is filing this Complaint within forty-five days of receipt of Saba's Notice Letter.

76. Saba's Notice Letter and accompanying statement lack any sufficient contention that the RE'929 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the RE'929 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys' fees and such other relief as this Court deems proper.

77. In Saba's Notice Letter, Saba provided no noninfringement argument for at least claims 1–3, 6–8, 10, 13, 17–24, 26–27, 29–30, 32–33, 35–36, 38–39 of the RE'929 Patent separate and apart from any assertion of invalidity of those claims.

78. On information and belief, Saba's ANDA Product and/or the use thereof infringes one or more claims of the RE'929 Patent.

79. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product before the expiration of the RE'929 Patent was an act of infringement of one or more claims of the RE'929 Patent under 35 U.S.C. § 271(e)(2)(A).

80. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product immediately and imminently upon approval of its ANDA.

81. On information and belief, Saba plans and intends to, and will, actively induce

infringement of the RE'929 Patent when Saba's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba's activities will be done with knowledge of the RE'929 Patent and specific intent to infringe that patent.

82. On information and belief, Saba's ANDA Product is not suitable for substantial non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the RE'929 Patent after approval of Saba's ANDA.

83. On information and belief, Saba has actual and constructive knowledge of the claims of the RE'929 Patent, and is aware that the submission of Saba's ANDA with the request for FDA approval prior to the expiration of the RE'929 Patent would constitute infringement of the RE'929 Patent.

84. The foregoing actions by Saba constitute and/or will constitute infringement of one or more claims of the RE'929 Patent, active inducement of infringement of one or more claims of the RE'929 Patent, and contributory infringement of one or more claims of the RE'929 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

85. BMS will be substantially and irreparably damaged by infringement of the claims of the RE'929 Patent.

86. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the RE'929 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 6 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE RE'929 PATENT BY SABA**

87. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

88. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba's infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the RE'929 Patent.

89. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the RE'929 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

**COUNT 7 — INFRINGEMENT OF THE '390 PATENT BY SABA**

90. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

91. Saba has submitted or caused the submission of Saba's ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product prior to the expiration of the '390 Patent.

92. In Saba's Notice Letter, Saba also notified BMS that, as part of its ANDA, Saba had filed certifications of the type described in Section 505(j)(2)(A)(vii)(IV) of the FDCA, 21 U.S.C. § 355(j)(2)(A)(vii)(IV), with respect to the '390 Patent. Saba submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the claims of the '390 Patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product. BMS is filing this Complaint within forty-five days of receipt of Saba's Notice Letter.

93. Saba's Notice Letter and accompanying statement lack any sufficient contention that the '390 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the '390 Patent renders

this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys' fees and such other relief as this Court deems proper.

94. On information and belief, Saba's ANDA Product and/or the use thereof infringes one or more claims of the '390 Patent.

95. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product before the expiration of the '390 Patent was an act of infringement of one or more claims of the '390 Patent under 35 U.S.C. § 271(e)(2)(A).

96. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product immediately and imminently upon approval of its ANDA.

97. On information and belief, Saba plans and intends to, and will, actively induce infringement of the '390 Patent when Saba's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba's activities will be done with knowledge of the '390 Patent and specific intent to infringe that patent.

98. On information and belief, Saba's ANDA Product is not suitable for substantial non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the '390 Patent after approval of Saba's ANDA.

99. On information and belief, Saba has actual and constructive knowledge of the claims of the '390 Patent, and is aware that the submission of Saba's ANDA with the request for FDA approval prior to the expiration of the '390 Patent would constitute infringement of the '390 Patent.

100. The foregoing actions by Saba constitute and/or will constitute infringement of one

or more claims of the ’390 Patent, active inducement of infringement of one or more claims of the ’390 Patent, and contributory infringement of one or more claims of the ’390 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

101. BMS will be substantially and irreparably damaged by infringement of the claims of the ’390 Patent.

102. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the ’390 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 8 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’390 PATENT BY SABA**

103. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

104. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba’s infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the ’390 Patent.

105. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the ’390 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

**COUNT 9 — INFRINGEMENT OF THE ’169 PATENT BY SABA**

106. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

107. Saba has submitted or caused the submission of Saba's ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product prior to the expiration of the '169 Patent.

108. Saba's Notice Letter and accompanying statement did not represent that Saba submitted a Paragraph IV certification for the '169 Patent and, therefore, lacks any sufficient contention that the '169 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the '169 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys' fees and such other relief as this Court deems proper.

109. On information and belief, Saba's ANDA Product and/or the use thereof infringes one or more claims of the '169 Patent.

110. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product before the expiration of the '169 Patent was an act of infringement of one or more claims of the '169 Patent under 35 U.S.C. § 271(e)(2)(A).

111. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product immediately and imminently upon approval of its ANDA.

112. On information and belief, Saba plans and intends to, and will, actively induce infringement of the '169 Patent when Saba's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba's activities will be done with knowledge of the '169 Patent and specific intent to infringe that patent.

113. On information and belief, Saba's ANDA Product is not suitable for substantial

non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the ’169 Patent after approval of Saba’s ANDA.

114. On information and belief, Saba has actual and constructive knowledge of the claims of the ’169 Patent, and is aware that the submission of Saba’s ANDA with the request for FDA approval prior to the expiration of the ’169 Patent would constitute infringement of the ’169 Patent.

115. The foregoing actions by Saba constitute and/or will constitute infringement of one or more claims of the ’169 Patent, active inducement of infringement of one or more claims of the ’169 Patent, and contributory infringement of one or more claims of the ’169 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

116. BMS will be substantially and irreparably damaged by infringement of the claims of the ’169 Patent.

117. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the ’169 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

## COUNT 10 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’169 PATENT BY SABA

118. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

119. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba’s infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the ’169 Patent.

120. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the '169 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

**COUNT 11 — INFRINGEMENT OF THE '948 PATENT BY SABA**

121. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

122. Saba has submitted or caused the submission of Saba's ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product prior to the expiration of the '948 Patent.

123. Saba's Notice Letter and accompanying statement did not represent that Saba submitted a Paragraph IV certification for the '948 Patent and, therefore, lacks any sufficient contention that the '948 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the '948 Patent renders this case "exceptional" as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys' fees and such other relief as this Court deems proper.

124. On information and belief, Saba's ANDA Product and/or the use thereof infringes one or more claims of the '948 Patent.

125. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product before the expiration of the '948 Patent was an act of infringement of one or more claims of the '948 Patent under 35 U.S.C. § 271(e)(2)(A).

126. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product immediately and imminently upon approval of its ANDA.

127. On information and belief, Saba plans and intends to, and will, actively induce infringement of the '948 Patent when Saba's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba's activities will be done with knowledge of the '948 Patent and specific intent to infringe that patent.

128. On information and belief, Saba's ANDA Product is not suitable for substantial non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the '948 Patent after approval of Saba's ANDA.

129. On information and belief, Saba has actual and constructive knowledge of the claims of the '948 Patent, and is aware that the submission of Saba's ANDA with the request for FDA approval prior to the expiration of the '948 Patent would constitute infringement of the '948 Patent.

130. The foregoing actions by Saba constitute and/or will constitute infringement of one or more claims of the '948 Patent, active inducement of infringement of one or more claims of the '948 Patent, and contributory infringement of one or more claims of the '948 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

131. BMS will be substantially and irreparably damaged by infringement of the claims of the '948 Patent.

132. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the '948 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

**COUNT 12 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’948 PATENT BY SABA**

133. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

134. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba’s infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the ’948 Patent.

135. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the ’948 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

**COUNT 13 — INFRINGEMENT OF THE ’245 PATENT BY SABA**

136. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

137. Saba has submitted or caused the submission of Saba’s ANDA to FDA and thereby seeks FDA approval under the FDCA to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product prior to the expiration of the ’245 Patent.

138. Saba is without adequate justification for asserting that the ’245 Patent is invalid, unenforceable, and/or not infringed by Saba. Any assertion by Saba of invalidity, unenforceability, and/or non-infringement with respect to the ’245 Patent renders this case “exceptional” as that term is set forth in 35 U.S.C. § 285, and entitles BMS to recovery of its attorneys’ fees and such other relief as this Court deems proper.

139. On information and belief, Saba’s ANDA Product and/or the use thereof infringes one or more claims of the ’245 Patent.

140. Saba's submission of Saba's ANDA for the purpose of obtaining approval to engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product before the expiration of the '245 Patent was an act of infringement of one or more claims of the '245 Patent under 35 U.S.C. § 271(e)(2)(A).

141. On information and belief, Saba will engage in the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba's ANDA Product immediately and imminently upon approval of its ANDA.

142. On information and belief, Saba plans and intends to, and will, actively induce infringement of the '245 Patent when Saba's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Saba's activities will be done with knowledge of the '245 Patent and specific intent to infringe that patent.

143. On information and belief, Saba's ANDA Product is not suitable for substantial non-infringing use. On information and belief, Saba plans and intends to, and will, contribute to infringement of the '245 Patent after approval of Saba's ANDA.

144. On information and belief, Saba has actual and constructive knowledge of the claims of the '245 Patent, and is aware that the submission of Saba's ANDA with the request for FDA approval prior to the expiration of the '245 Patent would constitute infringement of the '245 Patent.

145. The foregoing actions by Saba constitute and/or will constitute infringement of one or more claims of the '245 Patent, active inducement of infringement of one or more claims of the '245 Patent, and contributory infringement of one or more claims of the '245 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

146. BMS will be substantially and irreparably damaged by infringement of the claims of the ’245 Patent.

147. Unless Saba is enjoined from infringing, actively inducing infringement, and contributing to infringement of the claims of the ’245 Patent, BMS will suffer irreparable injury. BMS has no adequate remedy at law, and considering the balance of hardships between BMS and Saba, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

## COUNT 14 — DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ’245 PATENT BY SABA

148. BMS incorporates each of the preceding paragraphs as if fully set forth herein.

149. The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between BMS on the one hand and Saba on the other regarding Saba’s infringement, active inducement of infringement by others, and contributory infringement of, one or more claims of the ’245 Patent.

150. The Court should declare that the manufacture, use, offer for sale, sale, distribution, and/or importation of Saba’s ANDA Product will infringe, induce the infringement by others of, and contribute to the infringement by others of, the ’245 Patent under 35 U.S.C. § 271(a), (b), and/or (c).

## PRAYER FOR RELIEF

WHEREFORE, BMS respectfully requests the following relief:

(A) A judgment that one or more claims of the Patents-in-Suit have been infringed under 35 U.S.C. § 271(e)(2)(A) by Saba’s submission to the FDA of Saba’s ANDA;

(B) A judgment pursuant to 35 U.S.C. § 271(e)(4)(A) ordering that the effective date of any FDA approval of Saba's ANDA be not earlier than the latest expiration date of any of the Patents-in-Suit, including any extensions and additional periods of exclusivity;

(C) Preliminary and permanent injunctions enjoining Saba, and all persons acting in concert with Saba, from the manufacture, use, offer for sale, sale, distribution, and/or importation into the United States of Saba's ANDA Product, or any other drug product covered by or whose use is covered by one or more claims of one or more of the Patents-in-Suit, prior to the expiration of the Patents-in-Suit, including any extensions and additional periods of exclusivity;

(D) A permanent injunction enjoining Saba, and all persons acting in concert with Saba, from practicing any invention claimed in the Patents-in-Suit, or from actively inducing or contributing to the infringement of any claim of the Patents-in-Suit, until after the expiration of the Patents-in-Suit, including any extensions and additional periods of exclusivity;

(E) A judgment declaring that the commercial manufacture, use, offer for sale, sale, distribution, and/or importation into the United States of Saba's ANDA Product, or any other drug product that is covered by or whose use is covered by one or more claims of one or more of the Patents-in-Suit, prior to the expiration of the Patents-in-Suit, will infringe and/or contribute to and/or induce the infringement of the Patents-in-Suit;

(F) To the extent Saba has committed any acts with respect to the inventions claimed in the Patents-in-Suit, other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), a judgment awarding BMS damages for such acts;

(G) If Saba engages in the commercial manufacture, use, importation into the United States, offer for sale, and/or sale of Saba's ANDA Product prior to the expiration of the Patents-

in-Suit, a judgment awarding damages to BMS resulting from such infringement, together with interest;

(H) A judgment declaring that the Patents-in-Suit remain valid and enforceable;

(I) A declaration that this is an exceptional case and an award of attorneys' fees in this action pursuant to 35 U.S.C. § 285;

(J) BMS's costs and expenses in this action; and

(K) Such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
________________________________
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Bristol-Myers Squibb Co.*

OF COUNSEL:

Christopher N. Sipes
Megan P. Keane
Kaveh V. Saba
Allyson C. Corigliano
Christine M. Smith
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

November 20, 2026